MICHAEL FAILLACE & ASSOCIATES, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------X

AMBROCIO HERNANDEZ RAMIREZ, EDGAR EDUARDO OROMAN, ERNESTINO (A.K.A. MARIO) HERNANDEZ, EUSEBIO CRUZ, IGNACIO A. FERRADA DIAZ, JAIME LORENZO GARCIA, JOSE GONZALEZ, JUAN MIRANDA HUERTA, LUIS ANTONIO ORTIZ OCHOA, LUIS JOFREE LEMA MAYANCELA, and MANUEL DE JESUS GAMEZ SANCHEZ, *individually and on behalf of others similarly situated,*

Plaintiffs,

-against-

MARKETPLACE 41, INC. (D/B/A BISTRO MARKETPLACE), MARKETPLACE 125 INC. (D/B/A BISTRO MARKETPLACE), BISTRO MARKETPLACE 17 INC. (D/B/A SHELLEY'S KITCHEN), FRESH KITCHEN INC. (D/B/A FRESH KITCHEN), SHELLEY'S KITCHEN, INC. (D/B/A SHELLEY'S KITCHEN), PETER PARK, TONY CHOI, SCOTT SHIN, SANTOS BRAVO, and DAVID DOE,

Defendants.

--------------------------------------------------------X

**COMPLAINT**

**COLLECTIVE ACTION UNDER**

**29 U.S.C. § 216(b) and RULE 23**

**CLASS ACTION**

**ECF Case**

Plaintiffs Ambrocio Hernandez Ramirez, Edgar Eduardo Oroman, Ernestino (a.k.a. Mario)

Hernandez, Eusebio Cruz, Ignacio A. Ferrada Diaz, Jaime Lorenzo Garcia, Jose Gonzalez, Juan

Miranda Huerta, Luis Antonio Ortiz Ochoa, Luis Jofree Lema Mayancela, and Manuel De Jesus

Gamez Sanchez , individually and on behalf of others similarly situated (collectively, "Plaintiffs"), by and through their attorneys, Michael Faillace & Associates, P.C., upon their knowledge and belief, and as against Marketplace 41, Inc. (d/b/a Bistro Marketplace), Marketplace 125 Inc. (d/b/a Bistro Marketplace), Bistro Marketplace 17 Inc. (d/b/a Shelley's Kitchen), Fresh Kitchen Inc. (d/b/a Fresh Kitchen), Shelley's Kitchen, Inc. (d/b/a Shelley's Kitchen), ("Defendant Corporations"), Peter Park,  Tony Choi,  Scott Shin,  Santos Bravo, and  David Doe, ("Individual Defendants"), (collectively, "Defendants"), allege as follows:

## NATURE OF ACTION

1.   Plaintiffs are current and former employees of Defendants Marketplace 41, Inc. (d/b/a Bistro Marketplace), Marketplace 125 Inc. (d/b/a Bistro Marketplace), Bistro Marketplace 17 Inc. (d/b/a Shelley's Kitchen), Fresh Kitchen Inc. (d/b/a Fresh Kitchen), Shelley's Kitchen, Inc. (d/b/a Shelley's Kitchen), Peter Park, Tony Choi, Scott Shin, Santos Bravo, and David Doe.

2.   Defendants own, operate, or control three delis/restaurants, located at 125 Park Avenue, New York, New York 10168 under the name "Bistro Marketplace" (hereinafter "the Bistro Marketplace location"), at 90 Park Avenue, New York, New York 10016 under the name "Shelley's Kitchen" (hereinafter "the Shelley's Kitchen location"), and at 270 Madison Avenue, New York, New York 10016 under the name "Fresh Kitchen (hereinafter "the Fresh Kitchen location")".

3.   Upon information and belief, individual Defendants Peter Park, Tony Choi, Scott Shin, Santos Bravo, and David Doe, serve or served as owners, managers, principals, or agents of Defendant Corporations and, through these corporate entities, operate or operated the delis/restaurants as a joint or unified enterprise.

4.   Plaintiffs have been employed as cooks, grillers and ostensibly as delivery workers at

the delis/restaurants located at 125 Park Avenue, New York, New York 10168, 90 Park Avenue, New York, New York 10016, and 270 Madison Avenue, New York, New York 10016.

5.   Plaintiffs Ramirez, Oroman, Cruz, Ferrada, Garcia, Gonzalez, Miranda, Lema and Gamez ostensibly have been employed as delivery workers. However, they have been required to spend a considerable part of their work day performing non-tipped duties, including but not limited to refilling the refrigerators with sodas and other drinks, storing sodas and juices, carrying boxes with food products, bringing products from the basement to the restaurant, arranging products in the refrigerator, repairing the store's carts, taking out the trash, cleaning bathrooms and the general basement area, mopping and sweeping the restaurant floor, cleaning the hot food station, folding cardboard boxes, washing dishes, cooking bacon, preparing and cooking chicken, breaking eggs, cutting vegetables for the preparation of the breakfasts, picking up products from different locations such as utensils, cups and plates and buying items necessary for the restaurants at the supermarket (hereafter the "non-tipped duties").

6.   At all times relevant to this Complaint, Plaintiffs have worked for Defendants in excess of 40 hours per week, without appropriate minimum wage, overtime, and spread of hours compensation for the hours that they have worked.

7.   Rather, Defendants have failed to maintain accurate recordkeeping of the hours worked and have failed to pay Plaintiffs appropriately for any hours worked, either at the straight rate of pay or for any additional overtime premium.

8.   Further, Defendants have failed to pay Plaintiffs the required "spread of hours" pay for any day in which they have had to work over 10 hours a day.

9.   Furthermore, Defendants have repeatedly failed to pay Plaintiffs wages on a timely basis.

10. Defendants have employed and accounted for Plaintiffs Ramirez, Oroman, Cruz, Ferrada, Garcia, Gonzalez, Miranda, Lema and Gamez as delivery workers in their payroll, but in actuality their duties have required a significant amount of time spent performing the non-tipped duties alleged above.

11. Regardless, at all relevant times, Defendants have paid these Plaintiffs at a rate that is lower than the required tip-credit rate.

12. However, under both the FLSA and NYLL, Defendants are not entitled to take a tip credit because these Plaintiffs' non-tipped duties have exceeded 20% of each workday, or 2 hours per day, whichever is less in each day.  12 N.Y. C.R.R. §146.

13. Upon information and belief, Defendants have employed the policy and practice of disguising these Plaintiffs' actual duties in payroll records by designating them as delivery workers instead of non-tipped employees. This has allowed Defendants to avoid paying these Plaintiffs at the minimum wage rate and has enabled them to pay them at the tip-credit rate (which they still have failed to do).

14. In addition, Defendants have maintained a policy and practice of unlawfully appropriating these Plaintiffs' and other tipped employees' tips and have made unlawful deductions from these Plaintiffs' and other tipped employees' wages.

15. Defendants' conduct has extended beyond Plaintiffs to all other similarly situated employees.

16. At all times relevant to this Complaint, Defendants have maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

17. Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq. ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 et seq. and 650 et seq. (the "NYLL"), and the "spread of hours" and overtime wage orders of the New York Commissioner of Labor codified at N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.6 (herein the "Spread of Hours Wage Order"), including applicable liquidated damages, interest, attorneys' fees and costs.

18. Plaintiffs now bring this action as a class action under Rule 23 and seek certification of this action as a collective action on behalf of themselves individually and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

19. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

20. Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district, Defendants maintain their corporate headquarters and offices within this district, and Defendants operate three delis/restaurants located in this district. Further, Plaintiffs have been employed by Defendants in this district.

## PARTIES

### *Plaintiffs*

21. Plaintiff Ambrocio Hernandez Ramirez ("Plaintiff Ramirez" or "Mr. Ramirez") is an adult individual residing in Bronx County, New York.

22. Plaintiff Ramirez has been employed by Defendants at Bistro Marketplace from approximately June 2015 to the present date.

23. Plaintiff Edgar Eduardo Oroman ("Plaintiff Oroman" or "Mr. Oroman") is an adult individual residing in Richmond County, New York.

24. Plaintiff Oroman was employed by Defendants at Bistro Marketplace from approximately March 2015 until on or about October 2016.

25. Plaintiff Ernestino (a.k.a. Mario) Hernandez ("Plaintiff Hernandez" or "Mr. Hernandez") is an adult individual residing in Bronx County, New York.

26. Plaintiff Hernandez was employed by Defendants at Bistro Marketplace from approximately October 2012 until on or about September 6, 2018.

27. Plaintiff Eusebio Cruz ("Plaintiff Cruz" or "Mr. Cruz") is an adult individual residing in Queens County, New York.

28. Plaintiff Cruz was employed by Defendants at Bistro Marketplace and Fresh Kitchen from approximately June 19, 2018 until on or about September 19, 2018.

29. Plaintiff Ignacio A. Ferrada Diaz ("Plaintiff Ferrada" or "Mr. Ferrada") is an adult individual residing in Queens County, New York.

30. Plaintiff Ferrada has been employed by Defendants at Bistro Marketplace and Fresh Kitchen from approximately December 1, 2016 to the present date.

31. Plaintiff Jaime Lorenzo Garcia ("Plaintiff Garcia" or "Mr. Garcia") is an adult individual residing in Bronx County, New York.

32. Plaintiff Garcia was employed by Defendants at Bistro Marketplace from approximately March 28, 2017 until on or about August 17, 2018.

33. Plaintiff Jose Gonzalez ("Plaintiff Gonzalez" or "Mr. Gonzalez") is an adult individual

residing in Bronx County, New York.

34. Plaintiff Gonzalez was employed by Defendants at Bistro Marketplace from approximately October 2015 until on or about January 2016 and from approximately February 2017 until on or about June 2017.

35. Plaintiff Juan Miranda Huerta ("Plaintiff Miranda" or "Mr. Miranda") is an adult individual residing in Queens County, New York.

36. Plaintiff Miranda was employed by Defendants at Bistro Marketplace and Fresh Kitchen from approximately September 2017 until on or about October 4, 2018.

37. Plaintiff Luis Antonio Ortiz Ochoa ("Plaintiff Ortiz" or "Mr. Ortiz") is an adult individual residing in Queens County, New York.

38. Plaintiff Ortiz was employed by Defendants at Bistro Marketplace from approximately January 2012 until on or about February 2015.

39. Plaintiff Luis Jofree Lema Mayancela ("Plaintiff Lema" or "Mr. Lema") is an adult individual residing in New York County, New York.

40. Plaintiff Lema was employed by Defendants at Bistro Marketplace and Shelley's Kitchen from approximately May 2016 until on or about May 2017.

41. Plaintiff Manuel De Jesus Gamez Sanchez ("Plaintiff Gamez" or "Mr. Gamez") is an adult individual residing in Queens County, New York.

42. Plaintiff Gamez was employed by Defendants at Bistro Marketplace from approximately October 2013 until on or about January 2017.

*Defendants*

43. At all relevant times, Defendants own, operate, or control three delis/restaurants, located at 125 Park Avenue, New York, New York 10168 under the name "Bistro Marketplace",

at 90 Park Avenue, New York, New York 10016 under the name "Shelley's Kitchen", and at 270 Madison Avenue, New York, New York 10016 under the name "Fresh Kitchen".

44. Upon information and belief, Marketplace 41, Inc. (d/b/a Bistro Marketplace) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 125 Park Avenue, New York, New York 10168.

45. Upon information and belief, Marketplace 125 Inc. (d/b/a Bistro Marketplace) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 125 Park Avenue, New York, New York 10168.

46. Upon information and belief, Bistro Marketplace 17 Inc. (d/b/a Shelley's Kitchen) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 90 Park Avenue, New York, New York 10016.

47. Upon information and belief, Fresh Kitchen Inc. (d/b/a Fresh Kitchen) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 270 Madison Avenue, New York, New York 10016.

48. Upon information and belief, Shelley's Kitchen, Inc. (d/b/a Shelley's Kitchen) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 90 Park Avenue, New York, New York 10016.

49. Defendant Peter Park is an individual engaging (or who was engaged) in business in

this judicial district during the relevant time period. Defendant Peter Park is sued individually in his capacity as owner, officer and/or agent of Defendant Corporations. Defendant Peter Park possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

50. Defendant Tony Choi is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Tony Choi is sued individually in his capacity as owner, officer and/or agent of Defendant Corporations. Defendant Tony Choi possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

51. Defendant Scott Shin is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Scott Shin is sued individually in his capacity as owner, officer and/or agent of Defendant Corporations. Defendant Scott Shin possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

52. Defendant Santos Bravo is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Santos Bravo is sued individually in his capacity as a manager of Defendant Corporations. Defendant Santos Bravo possesses operational control over Defendant Corporations and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

53. Defendant David Doe is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant David Doe is sued individually in his capacity as a manager of Defendant Corporations. Defendant David Doe possesses operational control over Defendant Corporations and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

## **FACTUAL ALLEGATIONS**

### *Defendants Constitute Joint Employers*

54. Defendants operate three delis/restaurants located in the Midtown East section of Manhattan in New York City.

55. Individual Defendants, Peter Park, Tony Choi, Scott Shin, Santos Bravo, and David Doe, possess operational control over Defendant Corporations, possess ownership interests in Defendant Corporations, or control significant functions of Defendant Corporations.

56. Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

57. Each Defendant possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

58. Defendants jointly employed Plaintiffs (and all similarly situated employees) and are Plaintiffs' (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 et seq. and the NYLL.

59. In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

60. Upon information and belief, Individual Defendants Peter Park, Tony Choi, and Scott Shin operate Defendant Corporations as either alter egos of themselves and/or failed to operate Defendant Corporations as entities legally separate and apart from themselves, by among other things:

    a.  failing to adhere to the corporate formalities necessary to operate Defendant Corporations as Corporations,

    b.  defectively forming or maintaining the corporate entities of Defendant Corporations, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

    c.  transferring assets and debts freely as between all Defendants,

    d.  operating Defendant Corporations for their own benefit as the sole or majority shareholders,

    e.  operating Defendant Corporations for their own benefit and maintaining control over these corporations as closed Corporations,

     f.   intermingling assets and debts of their own with Defendant Corporations,

     g.   diminishing and/or transferring assets of Defendant Corporations to avoid full liability as necessary to protect their own interests, and

     h.   Other actions evincing a failure to adhere to the corporate form.

61. At all relevant times, Defendants have been Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants have had the power to hire and fire Plaintiffs, have controlled the terms and conditions of employment, and have determined the rate and method of any compensation in exchange for Plaintiffs' services.

62. In each year from 2012 to 2018, Defendants have, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

63. In addition, upon information and belief, Defendants and/or their enterprise have been directly engaged in interstate commerce. As an example, numerous items that are used in the delis on a daily basis are goods produced outside of the State of New York.

*Individual Plaintiffs*

64. Plaintiffs are current and former employees of Defendants who have been employed as cooks, grillers and ostensibly as delivery workers. However, the delivery workers have spent over 20% of each shift performing the non-tipped duties described above.

65. Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

*Plaintiff Ambrocio Hernandez Ramirez*

66. Plaintiff Ramirez has been employed by Defendants from approximately June 2015 to the present date.

67. Defendants ostensibly have employed Plaintiff Ramirez as a delivery worker.

68. However, Plaintiff Ramirez has also been required to spend a significant portion of his work day performing the non-tipped duties described above.

69. Although Plaintiff Ramirez ostensibly has been employed as a delivery worker, he has spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

70. Plaintiff Ramirez regularly has handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

71. Plaintiff Ramirez's work duties have required neither discretion nor independent judgment.

72. From approximately June 2015 until on or about August 2015, Plaintiff Ramirez worked from approximately 7:00 a.m. until on or about 3:00 p.m., 5 days a week (typically 40 hours per week).

73. From approximately August 2015 until the present date, Plaintiff Ramirez has worked from approximately 6:00 a.m. until on or about 3:00 p.m., 5 days a week (typically 45 hours per week).

74. From approximately June 2015 until on or about June 2016, Defendants paid Plaintiff Ramirez his wages in cash.

75. From approximately June 2016 to the present date, Defendants have paid Plaintiff Ramirez his wages by check.

76. From approximately June 2015 until on or about December 2015, Defendants paid Plaintiff Ramirez $8.75 per hour.

77. From approximately January 2016 until on or about December 2016, Defendants paid

Plaintiff Ramirez $9.00 per hour.

78. From approximately January 2017 until on or about December 2017, Defendants paid Plaintiff Ramirez $11.00 per hour.

79. From approximately January 2018 until on or about February 2018, Defendants paid Plaintiff Ramirez $13.00 per hour.

80. From approximately March 2018 until the present date, Defendants have paid Plaintiff Ramirez $8.70 per hour.

81. Defendants have never granted Plaintiff Ramirez any breaks or meal periods of any kind.

82. Plaintiff Ramirez has never been notified by Defendants that his tips are being included as an offset for wages.

83. Defendants have not accounted for these tips in any daily or weekly accounting of Plaintiff Ramirez's wages.

84. Defendants have withheld a portion of Plaintiff Ramirez's tips; specifically, Plaintiff Ramirez Believes that defendants have withheld approximately 65% of his weekly tips. Furthermore, for approximately three weeks Plaintiff Ramirez has not been paid his tips.

85. Plaintiff Ramirez has not been required to keep track of his time, nor to his knowledge, have Defendants utilize any time tracking device such as punch cards, that accurately reflect his actual hours worked.

86. On a number of occasions, Defendants have required Plaintiff Ramirez to sign a document, the contents of which he has not been allowed to review in detail.

87. In addition, in order to get paid, Plaintiff Ramirez has been required to sign a document in which Defendants have misrepresented the hours that he has worked per week.

88. Defendants have taken improper and illegal deductions from Plaintiff Ramirez's wages; specifically, Defendants have deducted two and a half hours from Plaintiff Ramirez's monthly wages for meals he never ate.

89. No notification, either in the form of posted notices or other means, has ever been given to Plaintiff Ramirez regarding overtime and wages under the FLSA and NYLL.

90. Defendants have never provided Plaintiff Ramirez an accurate statement of wages, as required by NYLL 195(3).

91. In fact, Defendants have adjusted Plaintiff Ramirez's paystubs so that they reflect inaccurate wages and hours worked.

92. Defendants have never given any notice to Plaintiff Ramirez, in English and in Spanish (Plaintiff Ramirez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

93. Defendants have required Plaintiff Ramirez to purchase "tools of the trade" with his own funds—including monthly MetroCards in order to make deliveries, ten shirts and three pairs of shoes per year for his uniform.

*Plaintiff Edgar Eduardo Oroman*

94. Plaintiff Oroman was employed by Defendants from approximately March 2015 until on or about October 2016.

95. Defendants ostensibly employed Plaintiff Oroman as a delivery worker.

96. However, Plaintiff Oroman was also required to spend a significant portion of his work day performing the non-tipped duties described above.

97. Although Plaintiff Oroman ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

98. Plaintiff Oroman regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

99. Plaintiff Oroman's work duties required neither discretion nor independent judgment.

100.   From approximately March 2015 until on or about July 2016, Plaintiff Oroman worked from approximately 7:00 a.m. until on or about 4:00 p.m., Mondays through Fridays (typically 45 hours per week).

101.   Throughout his employment, Defendants paid Plaintiff Oroman his wages in cash.

102.   From approximately March 2015 until on or about December 2015, Defendants paid Plaintiff Oroman $8.75 per hour.

103.   From approximately January 2016 until on or about July 2016, Defendants paid Plaintiff Oroman $9.00 per hour.

104.   Defendants never granted Plaintiff Oroman any breaks or meal periods of any kind.

105.   Plaintiff Oroman was never notified by Defendants that his tips were being included as an offset for wages.

106.   Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Oroman's wages.

107.   Defendants withheld a portion of Plaintiff Oroman's tips; specifically, Plaintiff Oroman Believes that defendants withheld approximately 65% of all his weekly tips.

108.   No notification, either in the form of posted notices or other means, was ever given to Plaintiff Oroman regarding overtime and wages under the FLSA and NYLL.

109.   Defendants did not provide Plaintiff Oroman an accurate statement of wages, as required by NYLL 195(3).

110.   Defendants did not give any notice to Plaintiff Oroman, in English and in Spanish

- 16 -

(Plaintiff Oroman's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

111.    Defendants required Plaintiff Oroman to purchase "tools of the trade" with his own funds—including five pairs of pants, five pairs of shirts, and an unlimited monthly MetroCard needed for deliveries throughout his employment.

*Plaintiff Ernestino (a.k.a. Mario) Hernandez*

112.    Plaintiff Hernandez was employed by Defendants from approximately October 2012 until on or about September 6, 2018.

113.    Defendants employed Plaintiff Hernandez as a griller and a cook.

114.    Plaintiff Hernandez regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

115.    Plaintiff Hernandez's work duties required neither discretion nor independent judgment.

116.    Throughout his employment with Defendants, Plaintiff Hernandez regularly worked in excess of 40 hours per week.

117.    From approximately October 2012 until on or about May 2013, Plaintiff Hernandez worked from approximately 5:00 a.m. until on or about 3:00 p.m. to 4:00 p.m., 5 days a week (typically 50 to 55 hours per week).

118.    From approximately May 2013 until on or about September 6, 2018, Plaintiff Hernandez worked from approximately 4:00 a.m. to 4:30 a.m. until on or about 3:00 p.m., 5 days a week and from approximately 4:00 a.m. until on or about 12:00 p.m. to 1:00 p.m., on Saturdays (typically 63 to 65 hours per week).

119.    From approximately October 2012 until on or about January 2017, Defendants paid

Plaintiff Hernandez his wages in cash.

120.    From approximately January 2017 until on or about September 6, 2018, Defendants paid Plaintiff Hernandez his wages in a combination of check and cash.

121.    From approximately October 2012 until on or about December 31, 2012, Defendants paid Plaintiff Hernandez a fixed weekly salary of $550 per week.

122.    From approximately January 1, 2013 until on or about December 31, 2013, Defendants paid Plaintiff Hernandez a fixed weekly salary of $600 per week.

123.    From approximately January 1, 2014 until on or about December 31, 2015, Defendants paid Plaintiff Hernandez a fixed weekly salary of $625 per week.

124.    From approximately January 1, 2016 until on or about December 31, 2016, Defendants paid Plaintiff Hernandez $11.00 per hour.

125.    From approximately January 1, 2017 until on or about September 6, 2018, Defendants paid Plaintiff Hernandez $13.00 per hour.

126.    From approximately October 2012 until approximately June 2016 Plaintiff Hernandez's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

127.    For example, Defendants required Plaintiff Hernandez to start working 1 to 2 hours prior to his scheduled start time two days a week, and did not pay him for the additional time he worked.

128.    In addition, Defendants deducted 30 minutes every day from Plaintiff Hernandez's weekly paycheck for meal breaks he never was allowed to take and $5.50 per day for meals he never ate.

129.    Plaintiff Hernandez was not required to keep track of his time, nor to his

knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

130.    On a number of occasions, Defendants required Plaintiff Hernandez to sign a document, the contents of which he was not allowed to review in detail.

131.    In addition, in order to get paid, Plaintiff Hernandez was required to sign a document in which Defendants misrepresented the hours that he worked per week.

132.    Defendants took improper and illegal deductions from Plaintiff Hernandez's wages; specifically, Defendants deducted half an hour from Plaintiff Hernandez's daily wage for meal breaks that he often was not allowed to take; Defendants also deducted $5.50 per day for food he did not eat every day.

133.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Hernandez regarding overtime and wages under the FLSA and NYLL.

134.    Defendants did not provide Plaintiff Hernandez an accurate statement of wages, as required by NYLL 195(3).

135.    In fact, Defendants adjusted Plaintiff Hernandez's paystubs so that they reflected inaccurate wages and hours worked.

136.    Defendants did not give any notice to Plaintiff Hernandez, in English and in Spanish (Plaintiff Hernandez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

137.    Defendants required Plaintiff Hernandez to purchase "tools of the trade" with his own funds—including seven shirts for his uniform.

*Plaintiff Eusebio Cruz*

138.    Plaintiff Cruz was employed by Defendants from approximately June 19, 2018 until

on or about September 19, 2018.

139.    Defendants ostensibly employed Plaintiff Cruz as a delivery worker.

140.    However, Plaintiff Cruz was also required to spend a significant portion of his work day performing the non-tipped duties described above.

141.    Although Plaintiff Cruz ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

142.    Plaintiff Cruz regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

143.    Plaintiff Cruz's work duties required neither discretion nor independent judgment.

144.    From approximately June 19, 2018 until on or about August 24, 2018, Plaintiff Cruz worked at the Bistro Marketplace location from approximately 7:00 a.m. until on or about 3:00 p.m. to 4:00 p.m., 5 days a week (typically 40 to 45 hours per week).

145.    From approximately September 4, 2018 until on or about September 19, 2018, Plaintiff Cruz worked at the Fresh Kitchen location from approximately 7:00 a.m. until on or about 3:00 p.m., 5 days a week (typically 40 hours per week).

146.    Throughout his employment, Defendants paid Plaintiff Cruz his wages in a combination of check and cash.

147.    From approximately June 19, 2018 until on or about August 24, 2018, Defendants paid Plaintiff Cruz $8.70 per hour.

148.    From approximately September 4, 2018 until on or about September 19, 2018, Defendants paid Plaintiff Cruz $8.70 per hour.

149.    Plaintiff Cruz was never notified by Defendants that his tips were being included as an offset for wages.

150.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Cruz's wages.

151.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Cruz regarding overtime and wages under the FLSA and NYLL.

152.    Defendants did not provide Plaintiff Cruz an accurate statement of wages, as required by NYLL 195(3).

153.    Defendants did not give any notice to Plaintiff Cruz, in English and in Spanish (Plaintiff Cruz's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

154.    Defendants required Plaintiff Cruz to purchase "tools of the trade" with his own funds—including five shirts for his uniform.

*Plaintiff Ignacio A. Ferrada Diaz*

155.    Plaintiff Ferrada has been employed by Defendants from approximately December 1, 2016 until the present date.

156.    Defendants ostensibly have employed Plaintiff Ferrada as a delivery worker.

157.    However, Plaintiff Ferrada has also been required to spend a significant portion of his work day performing the non-tipped duties described above.

158.    Although Plaintiff Ferrada ostensibly has been employed as a delivery worker, he has spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

159.    Plaintiff Ferrada regularly has handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

160.    Plaintiff Ferrada's work duties have required neither discretion nor independent

judgment.

161.    From approximately December 1, 2016 until on or about December 21, 2016, Plaintiff Ferrada worked at the Bistro Marketplace location from approximately 9:00 a.m. until on or about 8:30 p.m., Mondays through Fridays (typically 57.5 hours per week).

162.    From approximately December 22, 2016 until on or about November 30, 2017, Plaintiff Ferrada worked at the Bistro Marketplace location from approximately 11:00 a.m. until on or about 8:30 p.m., Mondays through Fridays (typically 47.5 hour per week).

163.    From approximately December 1, 2017 until on or about December 21, 2017, Plaintiff Ferrada worked at the Bistro Marketplace location from approximately 9:00 a.m. until on or about 8:30 p.m., Mondays through Fridays (typically 57.5 hours per week).

164.    From approximately December 22, 2017 until on or about September 4, 2018, Plaintiff Ferrada worked at the Bistro Marketplace location from approximately 11:00 a.m. until on or about 7:30 p.m., Mondays through Fridays (typically 42.5 hours per week).

165.    From approximately September 5, 2018 until the present date, Plaintiff Ferrada has worked at the Fresh Kitchen location from approximately 10:00 a.m. until on or about 6:30 p.m., Mondays through Fridays (typically 42.5 hours per week).

166.    Throughout his employment, Defendants have paid Plaintiff Ferrada his wages in cash.

167.    From approximately December 1, 2016 until on or about December 31, 2017, Defendants paid Plaintiff Ferrada $11.00 per hour.

168.    From approximately January 1, 2018 until the present date, Defendants have paid Plaintiff Ferrada $8.50 per hour.

169.    Plaintiff Ferrada has never been notified by Defendants that his tips are being

included as an offset for wages.

170.    Defendants have not accounted for these tips in any daily or weekly accounting of Plaintiff Ferrada's wages.

171.    Defendants have withheld a portion of Plaintiff Ferrada's tips; specifically, Plaintiff Ferrada believes that Defendants have withheld approximately $200.00 of his weekly tips. Plaintiff Ferrada has calculated that his weekly tips should be approximately $350.00 and Defendants only pay him $150.00 in weekly tips.

172.    On a number of occasions, Defendants have required Plaintiff Ferrada to sign a document, the contents of which he has not been allowed to review in detail.

173.    No notification, either in the form of posted notices or other means, has ever been given to Plaintiff Ferrada regarding overtime and wages under the FLSA and NYLL.

174.    Defendants have never provided Plaintiff Ferrada an accurate statement of wages, as required by NYLL 195(3).

175.    Defendants have never given any notice to Plaintiff Ferrada, in English and in Spanish (Plaintiff Ferrada's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

176.    Defendants have required Plaintiff Ferrada to purchase "tools of the trade" with his own funds—including black pants, black shirts and black shoes for his uniform.

*Plaintiff Jaime Lorenzo Garcia*

177.    Plaintiff Garcia was employed by Defendants from approximately March 28, 2017 until on or about August 17, 2018.

178.    Defendants ostensibly employed Plaintiff Garcia as a delivery worker.

179.    However, Plaintiff Garcia was also required to spend a significant portion of his

work day performing the non-tipped duties described above.

180.     Although Plaintiff Garcia ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

181.     Plaintiff Garcia regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

182.     Plaintiff Garcia's work duties required neither discretion nor independent judgment.

183.     From approximately March 28, 2017 until on or about December 31, 2017, Plaintiff Garcia worked one week per month from approximately 7:00 a.m. until on or about 3:30 p.m., 5 days a week, and three weeks per month from approximately 7:00 a.m. until on or about 3:30 p.m., 5 days a week and from approximately 7:00 a.m. until on or about 7:00 p.m., 1 day a week (typically 42.5 to 54.5 hours per week).

184.     From approximately January 1, 2018 until on or about August 17, 2018, Plaintiff Garcia worked from approximately 7:00 a.m. until on or about 3:30 p.m., 3 days a week (typically 25.5 hours per week).

185.     Throughout his employment, Defendants paid Plaintiff Garcia his wages in cash.

186.     From approximately March 28, 2017 until on or about December 31, 2017, Defendants paid Plaintiff Garcia $7.70 per hour.

187.     From approximately January 1, 2018 until on or about August 17, 2018, Defendants paid Plaintiff Garcia $8.70 per hour.

188.     Plaintiff Garcia's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

189.     For example, Defendants required Plaintiff Garcia to work an additional 10 to 15

minutes past his scheduled departure time every day, and did not pay him for the additional time he worked.

190.    Defendants never granted Plaintiff Garcia any breaks or meal periods of any kind.

191.    Plaintiff Garcia was never notified by Defendants that his tips were being included as an offset for wages.

192.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Garcia's wages.

193.    Defendants withheld a portion of Plaintiff Garcia's tips; specifically, Defendants withheld $25.00 to $30.00 of Plaintiff Garcia's weekly tips.

194.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Garcia regarding overtime and wages under the FLSA and NYLL.

195.    Defendants did not provide Plaintiff Garcia an accurate statement of wages, as required by NYLL 195(3).

196.    Defendants did not give any notice to Plaintiff Garcia, in English and in Spanish (Plaintiff Garcia's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Plaintiff Jose Gonzalez*

197.    Plaintiff Gonzalez was employed by Defendants from approximately October 2015 until on or about January 2016 and from approximately February 2017 until on or about June 2017.

198.    Defendants ostensibly employed Plaintiff Gonzalez as a delivery worker.

199.    However, Plaintiff Gonzalez was also required to spend a significant portion of his work day performing the non-tipped duties described above.

200.    Although Plaintiff Gonzalez ostensibly was employed as a delivery worker, he

spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

201.    Plaintiff Gonzalez regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

202.    Plaintiff Gonzalez's work duties required neither discretion nor independent judgment.

203.    From approximately October 2015 until on or about January 2016, Plaintiff Gonzalez worked from approximately 7:00 a.m. until on or about 3:00 p.m., 5 days a week (typically 40 hours per week).

204.    From approximately February 2017 until on or about June 2017, Plaintiff Gonzalez worked from approximately 7:00 a.m. until on or about 4:00 p.m., 5 days a week (typically 45 hours per week).

205.    Throughout his employment, Defendants paid Plaintiff Gonzalez his wages in cash.

206.    From approximately October 2015 until on or about January 2016, Defendants paid Plaintiff Gonzalez $9.00 per hour.

207.    From approximately February 2017 until on or about June 2017, Defendants paid Plaintiff Gonzalez $9.00 per hour.

208.    Defendants deducted two and a half hours from Plaintiff Gonzalez's weekly wages for meals he never ate.

209.    Plaintiff Gonzalez was never notified by Defendants that his tips were being included as an offset for wages.

210.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Gonzalez's wages.

211.    Defendants withheld a portion of Plaintiff Gonzalez's tips; specifically, Defendants withheld 60% or more of Plaintiff Gonzalez's tips each week.

212.    Plaintiff Gonzalez was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

213.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Gonzalez regarding overtime and wages under the FLSA and NYLL.

214.    Defendants did not provide Plaintiff Gonzalez an accurate statement of wages, as required by NYLL 195(3).

215.    In fact, Defendants adjusted Plaintiff Gonzalez's paystubs so that they reflected inaccurate wages and hours worked.

216.    Defendants did not give any notice to Plaintiff Gonzalez, in English and in Spanish (Plaintiff Gonzalez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

### Plaintiff Juan Miranda Huerta

217.    Plaintiff Miranda was employed by Defendants from approximately September 2017 until on or about October 4, 2018.

218.    Defendants ostensibly employed Plaintiff Miranda as a delivery worker.

219.    However, Plaintiff Miranda was also required to spend a significant portion of his work day performing the non-tipped duties described above.

220.    Although Plaintiff Miranda ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

221.    Plaintiff Miranda regularly handled goods in interstate commerce, such as food and

other supplies produced outside the State of New York.

222.    Plaintiff Miranda's work duties required neither discretion nor independent judgment.

223.    From approximately September 2017 until on or about September 4, 2018, Plaintiff Miranda worked at the Bistro Marketplace location from approximately 6:00 a.m. until on or about 3:00 p.m., Mondays, Thursdays, and Fridays and from approximately 5:00 a.m. until on or about 4:00 p.m., Tuesdays and Wednesdays (typically 49 hours per week).

224.    For approximately four weeks from approximately September 2017 until on or about September 4, 2018, Plaintiff Miranda worked at the Bistro Marketplace location from approximately 6:00 a.m. until on or about 3:00 p.m., Mondays, Thursdays, and Fridays and from approximately 5:00 a.m. until on or about 4:00 p.m., Tuesdays and Wednesdays, and from approximately 6:00 a.m. until on or about 3:00 p.m. one day a week (typically 58 hours per week).

225.    From approximately September 5, 2018 until on or about October 4, 2018, Plaintiff Miranda worked at the Fresh Kitchen location from approximately 6:00 a.m. until on or about 3:00 p.m., Mondays, Thursdays, and Fridays and from approximately 5:00 a.m. until on or about 4:00 p.m., Tuesdays and Wednesdays (typically 49 hours per week).

226.    Throughout his employment, Defendants paid Plaintiff Miranda his wages by check.

227.    From approximately September 2017 until on or about December 31, 2017, Defendants paid Plaintiff Miranda $7.50 per hour.

228.    From approximately January 1, 2018 until on or about October 4, 2018, Defendants paid Plaintiff Miranda $8.50 per hour.

229.    For approximately three weeks, Defendants did not pay Plaintiff Miranda any

wages for his work.

230.   Plaintiff Miranda was never notified by Defendants that his tips were being included as an offset for wages.

231.   Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Miranda's wages.

232.   Defendants withheld a portion of Plaintiff Miranda's tips; specifically, Defendants withheld at least half of Plaintiff Miranda's weekly tips.

233.   Plaintiff Miranda was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

234.   Defendants required Plaintiff Miranda to sign a document, the contents of which he was not allowed to review in detail, in order to release his weekly pay.

235.   On a number of occasions, Defendants required Plaintiff Miranda to sign a document, the contents of which he was not allowed to review in detail.

236.   Defendants took improper and illegal deductions from Plaintiff Miranda's wages; specifically, Defendants charged Plaintiff Miranda $52 for taking a longer time to complete a delivery.

237.   No notification, either in the form of posted notices or other means, was ever given to Plaintiff Miranda regarding overtime and wages under the FLSA and NYLL.

238.   Defendants did not provide Plaintiff Miranda an accurate statement of wages, as required by NYLL 195(3).

239.   Defendants did not give any notice to Plaintiff Miranda, in English and in Spanish (Plaintiff Miranda's primary language), of his rate of pay, employer's regular pay day, and such

other information as required by NYLL §195(1).

240.    Defendants required Plaintiff Miranda to purchase "tools of the trade" with his own funds—including a bicycle, shirts and pants for his uniform, and a weekly unlimited MetroCard throughout his employment.

*Plaintiff Luis Antonio Ortiz Ochoa*

241.    Plaintiff Ortiz was employed by Defendants from approximately January 2012 until on or about February 2015.

242.    Defendants employed Plaintiff Ortiz as a griller.

243.    Plaintiff Ortiz regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

244.    Plaintiff Ortiz's work duties required neither discretion nor independent judgment.

245.    From approximately January 2012 until on or about February 2015, Plaintiff Ortiz worked at the Bistro Marketplace location from approximately 5:30 a.m. to 6 a.m. until on or about 4:00 p.m. to 4:30 p.m., Mondays through Thursdays and at the Fresh Kitchen location from approximately 5:30 a.m. to 6:00 a.m. until on or about 4:00 p.m. to 4:30 p.m., Fridays through Sundays (typically 50 to 55 hours per week).

246.    Throughout his employment, Defendants paid Plaintiff Ortiz his wages in cash.

247.    From approximately January 2012 until on or about February 2015, Defendants paid Plaintiff Ortiz a fixed salary of $700 per week.

248.    Plaintiff Ortiz's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

249.    For example, Defendants required Plaintiff Ortiz to start working  30 minutes prior to his scheduled start time, and work 30 minutes past his scheduled departure time every day, and

did not pay him for the additional time he worked.

250.    Defendants never granted Plaintiff Ortiz any breaks or meal periods of any kind.

251.    Plaintiff Ortiz was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

252.    Defendants took improper and illegal deductions from Plaintiff Ortiz's wages; specifically, Defendants deducted $4.50 daily for meals he never ate.

253.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Ortiz regarding overtime and wages under the FLSA and NYLL.

254.    Defendants did not provide Plaintiff Ortiz an accurate statement of wages, as required by NYLL 195(3).

255.    Defendants did not give any notice to Plaintiff Ortiz, in English and in Spanish (Plaintiff Ortiz's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

256.    Defendants required Plaintiff Ortiz to purchase "tools of the trade" with his own funds; specifically, Plaintiff Ortiz was charged $15.00 per week for his uniform.

*Plaintiff Luis Jofree Lema Mayancela*

257.    Plaintiff Lema was employed by Defendants from approximately May 2016 until on or about May 2017.

258.    Defendants employed Plaintiff Lema as a cook and ostensibly as a delivery worker.

259.    However, Plaintiff Lema was also required to spend a significant portion of his work day performing the non-tipped duties described above.

260.    Although Plaintiff Lema was ostensibly employed as a delivery worker, he spent

over 20% of each day performing non-tipped work throughout his employment with Defendants.

261.    Plaintiff Lema regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

262.    Plaintiff Lema's work duties required neither discretion nor independent judgment.

263.    From approximately May 2016 until on or about August 14, 2016, Plaintiff Lema worked at the Bistro Marketplace location from approximately 7:30 a.m. until on or about 3:00 p.m., 5 days a week and at Shelley's Kitchen from approximately 3:00 p.m. until on or about 6:00 p.m. to 6:30 p.m., 5 days a week (typically 52.5 to 55 hours per week).

264.    From approximately August 15, 2016 until on or about May 2017, Plaintiff Lema worked at the Bistro Marketplace location from approximately 10:00 a.m. to 11:00 a.m. until on or about 3:00 p.m., 5 days a week and at the Shelley's Kitchen's location from approximately 3:00 p.m. until on or about 6:00 to 6:30 p.m., 5 days a week (typically 35 to 42.5 hours per week).

265.    From approximately August 15, 2016 until on or about May 2017, on three separate occasions, Plaintiff Lema worked at the Bistro Marketplace location from approximately 10:00 a.m. to 11:00 a.m. until on or about 3:00 p.m., 5 days a week and at the Shelley's Kitchen's location from approximately 3:00 p.m. until on or about 6:00 to 6:30 p.m., 5 days a week and from approximately 7:30 a.m. until on or about 6:00 p.m., 1 day a week (typically 45.5 to 53 hours per week).

266.    Throughout his employment, Defendants paid Plaintiff Lema his wages in cash.

267.    From approximately May 2016 until on or about May 2017, Defendants paid Plaintiff Lema $9.00 per hour.

268.    Plaintiff Lema's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

269.    For example, Defendants required Plaintiff Lema to work an additional 30 minutes past his scheduled departure time every day, and did not pay him for the additional time he worked.

270.    Defendants never granted Plaintiff Lema any breaks or meal periods of any kind.

271.    Nevertheless, Defendants deducted $22 to $27.50 per week from Plaintiff Lema's weekly paycheck for meals he seldom ever ate.

272.    Plaintiff Lema was never notified by Defendants that his tips were being included as an offset for wages.

273.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Lema's wages.

274.    Defendants withheld a portion of Plaintiff Lema's tips; specifically, Defendants deducted money from Plaintiff Lema's tips if the owner needed to buy coffee machines or carpets.

275.    Plaintiff Lema was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

276.    On a number of occasions, Defendants required Plaintiff Lema to sign a document, the contents of which he was not allowed to review in detail, in order to release his weekly pay.

277.    Defendants took improper and illegal deductions from Plaintiff Lema's wages; specifically, Defendants deducted $22 to $27.50 from Plaintiff Lema's weekly wages for meals he never ate.

278.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Lema regarding overtime and wages under the FLSA and NYLL.

279.    Defendants did not provide Plaintiff Lema an accurate statement of wages, as required by NYLL 195(3).

280.    In fact, Defendants adjusted Plaintiff Lema's paystubs so that they reflected inaccurate wages and hours worked.

281.    Defendants did not give any notice to Plaintiff Lema, in English and in Spanish (Plaintiff Lema's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

282.    Defendants required Plaintiff Lema to purchase "tools of the trade" with his own funds—including monthly MetroCards for deliveries.

*Plaintiff Manuel De Jesus Gamez Sanchez*

283.    Plaintiff Gamez was employed by Defendants from approximately October 2013 until on or about January 2017.

284.    Defendants ostensibly employed Plaintiff Gamez as a delivery worker.

285.    However, Plaintiff Gamez was also required to spend a significant portion of his work day performing the non-tipped duties described above.

286.    Although Plaintiff Gamez ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

287.    Plaintiff Gamez regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

288.    Plaintiff Gamez's work duties required neither discretion nor independent judgment.

289.    Throughout his employment with Defendants, Plaintiff Gamez regularly worked in excess of 40 hours per week.

290.    From approximately October 2013 until on or about January 2016, Plaintiff Gamez worked from approximately 9:00 a.m. until on or about 7:00 p.m., Mondays through Fridays and

from approximately 5:00 a.m. until on or about 3:00 p.m., on Sundays (typically 60 hours per week).

291.    From approximately January 2016 until on or about January 2017, Plaintiff Gamez worked from approximately 11:00 a.m. until on or about 7:00 p.m., Mondays through Fridays and from approximately 9:00 a.m. until on or about 3:00 p.m., on Sundays (typically 46 hours per week).

292.    Throughout his employment, Defendants paid Plaintiff Gamez his wages in cash.

293.    From approximately October 2013 until on or about December 31, 2013, Defendants paid Plaintiff Gamez $7.25 per hour.

294.    From approximately January 1, 2014 until on or about December 31, 2014, Defendants paid Plaintiff Gamez $8.00 per hour.

295.    From approximately January 1, 2015 until on or about January 6, 2016, Defendants paid Plaintiff Gamez $8.75 per hour.

296.    From approximately January 7, 2016 until on or about January 2017, Defendants paid Plaintiff Gamez $11 per hour.

297.    Plaintiff Gamez was never notified by Defendants that his tips were being included as an offset for wages.

298.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Gamez's wages.

299.    Defendants withheld a portion of Plaintiff Gamez's tips.

300.     Specifically, Defendants withheld 80 to 90 percent of Plaintiff Gamez's weekly tips; Plaintiff Gamez believes that that he received $130.00 to $140.00 in tips per week when, according to his calculations, he should have received at least $1,000.00 a week in tips.

301.    Plaintiff Gamez was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

302.    On a number of occasions, Defendants required Plaintiff Gamez to sign a document, the contents of which he either was not allowed to review in detail or in which Defendants misrepresented the hours that he worked per week, in order to release his weekly pay.

303.    Furthermore, on a number of occasions, Defendants required Plaintiff Gamez to sign a document, the contents of which he was not allowed to review in detail.

304.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Gamez regarding overtime and wages under the FLSA and NYLL.

305.    Defendants did not provide Plaintiff Gamez an accurate statement of wages, as required by NYLL 195(3).

306.    In fact, Defendants adjusted Plaintiff Gamez's paystubs so that they reflected inaccurate wages and hours worked.

307.    Defendants did not give any notice to Plaintiff Gamez, in English and in Spanish (Plaintiff Gamez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Defendants' General Employment Practices*

308.    At all times relevant to this Complaint, Defendants have maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work in excess of 40 hours a week without paying them appropriate minimum wage, spread of hours pay, and overtime compensation as required by federal and state laws.

309.    Plaintiffs have been victims of Defendants' common policy and practices which

violate their rights under the FLSA and New York Labor Law by, inter alia, not paying them the wages they have been owed for the hours they have worked.

310.    Defendants' pay practices have resulted in Plaintiffs not receiving payment for all their hours worked, and have resulted in Plaintiffs' effective rate of pay falling below the required minimum wage rate.

311.    Defendants habitually have required Plaintiffs to work additional hours beyond their regular shifts but have not provided them with any additional compensation.

312.    Defendants have required Plaintiffs Ramirez, Oroman, Cruz, Ferata, Garcia, Gonzalez, Miranda, Lema and Gamez and all other delivery workers to perform general non-tipped tasks in addition to their primary duties as delivery workers.

313.    These Plaintiffs and all similarly situated employees, ostensibly have been employed as tipped employees by Defendants, although their actual duties have included a significant amount of time spent performing the non-tipped duties outlined above.

314.    These Plaintiffs' duties have not been incidental to their occupation as tipped workers, but instead have constituted entirely unrelated general deli work with duties, including the non-tipped duties described above.

315.    These Plaintiffs and all other tipped workers have been paid at a rate that is lower than the lower tip-credit rate by Defendants.

316.    However, under state law, Defendants are not entitled to a tip credit because the tipped worker's and these Plaintiffs' non-tipped duties exceed 20% of each workday (or 2 hours a day, whichever is less) (12 N.Y.C.R.R. § 146).

317.    New York State regulations provide that an employee cannot be classified as a tipped employee on any day in which he or she has been assigned to work in an occupation in

which tips are not customarily received. (12 N.Y.C.R.R. §§137-3.3 and 137-3.4). Similarly, under federal regulation 29 C.F.R. §531.56(e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

318.    In violation of federal and state law as codified above, Defendants have classified these Plaintiffs and other tipped workers as tipped employees, and have paid them at a rate that is lower than the lower tip-credit rate when they should have classified them as non-tipped employees and paid them at the minimum wage rate.

319.    Defendants have failed to inform Plaintiffs Ramirez, Oroman, Cruz, Ferata , Garcia, Gonzalez, Miranda, Lema and Gamez who have received tips that Defendants have intended to take a deduction against these Plaintiffs' earned wages for tip income, as required by the NYLL before any deduction may be taken.

320.    Defendants have failed to inform Plaintiffs who have received tips, that their tips are being credited towards the payment of the minimum wage.

321.    Defendants have failed to maintain a record of tips earned by Plaintiffs who have worked as delivery workers for the tips they have received.

322.    As part of its regular business practice, Defendants have intentionally, willfully, and repeatedly harmed Plaintiffs who have received tips, by engaging in a pattern, practice, and/or policy of violating the FLSA and the NYLL. This policy and pattern or practice has included depriving delivery workers of a portion of the tips earned during the course of employment.

323.    Defendants have unlawfully misappropriated charges purported to be gratuities received by tipped Plaintiffs, and other tipped employees, in violation of New York Labor Law § 196-d (2007).

324.    Under the FLSA and NYLL, in order to be eligible for a "tip credit," employers of

tipped employees must either allow employees to keep all the tips that they receive or forgo the tip credit and pay them the full hourly minimum wage.

325.    Defendants have willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and NYLL by failing to maintain accurate and complete timesheets and payroll records.

326.    Defendants' time keeping system does not reflect the actual hours that Plaintiffs have worked.

327.    Defendants have required Plaintiffs to sign a document that reflects inaccurate or false hours worked.

328.    On a number of occasions, Defendants have required Plaintiffs to sign a document the contents of which they have not been allowed to review in detail.

329.    Defendants have paid Plaintiffs their wages in cash as well as a combination of cash and check.

330.    Defendants have failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

331.    Upon information and belief, these practices by Defendants have been done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) have worked, and to avoid paying Plaintiffs properly for their full hours worked.

332.    Defendants have engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

333.    Defendants' unlawful conduct is intentional, willful, in bad faith, and caused

significant damages to Plaintiffs and other similarly situated former workers.

334.    Defendants have failed to provide Plaintiffs  and other employees with accurate wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

335.    Defendants have failed to provide Plaintiffs  and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

**FLSA COLLECTIVE ACTION CLAIMS**

336.    Plaintiffs bring their FLSA minimum, overtime wages and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b) on behalf of all similarly situated persons who are or were employed by Defendants, or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period"),

as employees of Defendants (the "FLSA Class").

337.    At all relevant times, Plaintiffs and other members of the FLSA Class who are and/or have been similarly situated, have had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans of willfully failing and refusing to pay them the required minimum wage, overtime pay of one and one-half times their regular rates for work in excess of forty (40) hours per workweek under the FLSA and willfully failing to keep records required by the FLSA.

338.    The claims of Plaintiffs stated herein are similar to those of the other employees.

## FEDERAL RULE 23 CLASS ACTION ALLEGATIONS

339.    Plaintiffs sue on their own behalf and on behalf of a class of persons similarly situated under Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure.

340.    Plaintiffs bring their New York Labor Law minimum wage, overtime, spread-of-hours, wage deduction, and liquidated damages claims on behalf of all persons who are or were employed by Defendants in the State of New York, on or after the date that is six years before the filing of the complaint in this case, to entry of judgment in this case (the "Class Period"). All said persons, including Plaintiffs, are referred to herein as the "Class."

341.    The persons in the Class are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and facts on which the calculation of that number are presently within the sole control of Defendants, there are approximately over sixty members of the Class during the Class Period.

342.    There are questions of law and fact common to the Class including:

a)    What proof of hours worked is sufficient where Defendants fail in their duty to maintain time records;

b)      What were the policies, practices, programs, procedures, protocols and plans of Defendants regarding payment of wages for all hours worked;

c)      What were the policies, practices, programs, procedures, protocols and plans of Defendants regarding payment of at least minimum wages for all hours worked;

d)      Whether Defendants have failed and/or refused to pay Plaintiffs the minimum wage and overtime at the premium rate within the meaning of the New York Labor Law;

e)      Whether Defendants have failed and/or refused to pay Plaintiffs "Spread of Hours" Pay;

f)      Whether Defendants improperly deducted "shorts" from the Plaintiffs' wages;

g)      At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay the class members for their work; and

h)      What are the common conditions of employment and in the workplace, such as recordkeeping, clock-in procedures, breaks, and policies and practices that affect whether the class was paid at overtime rates for minimum wage and overtime work.

343.    The claims of the representative parties are typical of the claims of the class. Plaintiffs and the other class members were subjected to Defendants' policies, practices, programs, procedures, protocols and plans alleged herein concerning non-payment of overtime, non-payment of wages, and failure to keep required records. The job duties of the named Plaintiffs were and are typical of those of class members.

344.    The representative parties will fairly and adequately protect the interests of the Class and have no interests antagonistic to the class. The Named Plaintiffs are represented by

attorneys who are experienced and competent in both class action litigation and employment litigation.

345.    The common questions of law and fact predominate over questions affecting only individual members.

346.    A class action is superior to other available methods for fairly and efficiently adjudicating controversy, particularly in the context of wage and hour litigation, where individual plaintiffs lack the financial resources to prosecute a lawsuit in federal court against corporate defendants vigorously. The damages suffered by individual class members are small, compared to the expense and burden of individual prosecution of this litigation. Class action treatment will obviate unduly duplicative litigation and the possibility of inconsistent judgments.

347.    Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

## FIRST CAUSE OF ACTION

### VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA

348.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

349.    At all times relevant to this action, Defendants have been Plaintiffs' employers (and employers of the putative FLSA and Rule 23 Class members) within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).  Defendants have the power to hire and fire Plaintiffs (and the FLSA and Rule 23 Class members), have controlled the terms and conditions of employment, and have determined the rate and method of any compensation in exchange for their employment.

350.    At all times relevant to this action, Defendants have been engaged in commerce or in an industry or activity affecting commerce.

351. Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

352. Defendants have failed to pay Plaintiffs (and the FLSA and Rule 23 Class members) at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

353. Defendants' failure to pay Plaintiffs (and the FLSA and Rule 23 Class members) at the applicable minimum hourly rate is willful within the meaning of 29 U.S.C. § 255(a).

354. Plaintiffs (and the FLSA and Rule 23 Class members) have been damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

### VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA

355. Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

356. Defendants, in violation of 29 U.S.C. § 207 (a)(1) of the FLSA, have failed to pay Plaintiffs (and the FLSA and Rule 23 Class members) overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek.

357. Defendants' failure to pay Plaintiffs (and the FLSA and Rule 23 Class members) overtime compensation is willful within the meaning of 29 U.S.C. § 255(a).

358. Plaintiffs (and the FLSA and Rule 23 Class members) have been damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

### VIOLATION OF THE NEW YORK MINIMUM WAGE ACT

359. Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

360. At all times relevant to this action, Defendants have been Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651. Defendants have the power to hire and

fire Plaintiffs, have controlled terms and conditions of employment, and have determined the rates and methods of any compensation in exchange for employment.

361.    Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, have paid Plaintiffs (and the FLSA and Rule 23 Class members) less than the minimum wage.

362.    Defendants' failure to pay Plaintiffs minimum wage is willful within the meaning of N.Y. Lab. Law § 663.

363.    Plaintiffs have been damaged in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

### VIOLATION OF THE OVERTIME PROVISIONS

### OF THE NEW YORK STATE LABOR LAW

364.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

365.    Defendants, in violation of N.Y. Lab. Law § 190 et seq. and supporting regulations of the New York State Department of Labor, have failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek.

366.    Defendants have failed to pay Plaintiffs in a timely fashion, as required by Article 6 of the New York Labor Law.

367.    Defendants' failure to pay Plaintiffs overtime compensation is willful within the meaning of N.Y. Lab. Law § 663.

368.    Plaintiffs have been damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

### VIOLATION OF THE SPREAD OF HOURS WAGE ORDER

**OF THE NEW YORK COMMISSIONER OF LABOR**

369.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

370.    Defendants have failed to pay Plaintiffs one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiffs' spread of hours has exceeded ten hours in violation of New York Lab. Law §§ 190 et seq. and 650 et seq. and the wage order of the New York Commissioner of Labor codified at N.Y. Comp. Codes R. & Regs. Tit. 12, § 142-1.6.

371.    Defendants' failure to pay Plaintiffs an additional hour's pay for each day Plaintiffs' spread of hours has exceeded ten hours has been willful within the meaning of New York Lab. Law § 663.

372.    Plaintiffs have been damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

### VIOLATION OF THE NOTICE AND RECORDKEEPING

### REQUIREMENTS OF THE NEW YORK LABOR LAW

373.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

374.    Defendants have failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

375.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs

and attorneys' fees.

**SEVENTH CAUSE OF ACTION**

**VIOLATION OF THE WAGE STATEMENT PROVISIONS**

**OF THE NEW YORK LABOR LAW**

376.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

377.    With each payment of wages, Defendants have failed to provide Plaintiffs with an accurate statement listing each of the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL 195(3).

378.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

**EIGHTH CAUSE OF ACTION**

**RECOVERY OF EQUIPMENT COSTS**

379.    Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

380.    Defendants have required Plaintiffs to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform their jobs, such as bicycles and maintenance and repair, further reducing their wages in violation of the FLSA and NYLL: 29 U.S.C. § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

381.     Plaintiffs have been damaged in an amount to be determined at trial.

## NINTH CAUSE OF ACTION

## UNLAWFUL DEDUCTIONS FROM TIPS IN VIOLATION

## OF THE NEW YORK LABOR LAW

382.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

383.     At all relevant times, Defendants have been Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

384.     New York State Labor Law § 196-d prohibits any employer or his agents, including owners and managers, from demanding or accepting, directly or indirectly, any part of the gratuities received by an employee, or retaining any part of a gratuity, or any charge purported to be a gratuity, for an employee.

385.     Defendants unlawfully have misappropriated a portion of Plaintiffs' tips that have been received from customers, as well as orders placed by credit card and/or Seamless Web.

386.     Defendants knowingly and intentionally have retained a portion of Plaintiffs' tips in violations of the NYLL and supporting Department of Labor Regulations.

387.     Plaintiffs have been damaged in an amount to be determined at trial.

## TENTH CAUSE OF ACTION

## UNLAWFUL DEDUCTIONS FROM WAGES IN VIOLATION

## OF THE NEW YORK LABOR LAW

388.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

389.     At all relevant times, Defendants have been Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

390.     Defendants have made unlawful deductions from the wages of Plaintiffs.

391.    The deductions made from Plaintiffs' wages are not authorized or required by law.

392.    Through their knowing and intentional efforts to take unauthorized deductions from the wages of Plaintiffs, Defendants willfully have violated NYLL, Article 6, §§ 190 et seq., and supporting New York State regulations.

393.    Plaintiffs have been damaged in an amount to be determined at trial.

## ELEVENTH CAUSE OF ACTION

### VIOLATION OF THE TIMELY PAYMENT PROVISIONS

### OF THE NEW YORK LABOR LAW

394.    Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

395.    Defendants have not paid Plaintiffs on a regular weekly basis, in violation of NYLL §191.

396.    Defendants are liable to each Plaintiff in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants by:

(a)    Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members, apprising them of the pendency of this action, and permitting them promptly to file consents to be FLSA and Rule 23 Class members in the FLSA claims in this action;

(b)    Declaring that Defendants have violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA and Rule 23 Class members

(c)    Declaring that Defendants have violated the overtime wage provisions of, and

associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA and Rule 23 Class members;

(d)     Declaring that Defendants have violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs', and the FLSA and Rule 23 Class members', compensation, hours, wages, and any deductions or credits taken against wages;

(e)     Declaring that Defendants' violation of the provisions of the FLSA are willful as to Plaintiffs and the FLSA and Rule 23 Class members;

(f)     Awarding Plaintiffs and the FLSA and Rule 23 Class members damages for the amount of unpaid minimum and overtime wages, and damages for any improper deductions or credits taken against wages under the FLSA, as applicable;

(g)     Awarding Plaintiffs and the FLSA and Rule 23 Class members liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum and overtime wages, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h)     Declaring that Defendants have violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(i)     Declaring that Defendants have violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(j)     Declaring that Defendants have violated the notice, recordkeeping, and wage statement requirements of the NYLL with respect to Plaintiffs' compensation, hours, wages; and any deductions or credits taken against wages;

(k)     Declaring that Defendants have violated the Spread of Hours Wage Order of the

New York Commission of Labor as to Plaintiffs;

(l)     Declaring that Defendants' violations of the New York Labor Law and the spread of hours wage order are willful as to Plaintiffs;

(m)    Awarding Plaintiffs damages for the amount of unpaid minimum and overtime, or credits taken against wages as well as awarding spread of hours pay under the NYLL as applicable;

(n)     Awarding Plaintiffs liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum wage, overtime compensation, spread of hours pay and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(o)     Awarding Plaintiffs damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(p)     Awarding Plaintiffs and the FLSA and Rule 23 Class members pre-judgment and post-judgment interest as applicable;

(q)     Awarding Plaintiffs and the FLSA and Rule 23 Class members the expenses incurred in this action, including costs and attorney's fees;

(r)     Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(s)     All such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated:  New York, New York
        November 12, 2018

MICHAEL FAILLACE & ASSOCIATES, P.C.

By:        /s/ Michael Faillace
        Michael Faillace [MF-8436]
        60 East 42nd Street, Suite 4510
        New York, New York 10165
        Telephone: (212) 317-1200
        Facsimile: (212) 317-1620
        *Attorneys for Plaintiffs*

# Michael Faillace & Associates, P.C.
### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

August 27, 2018

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                              Ambrocio Hernandez Ramirez

                                            Michael Faillace & Associates, P.C.

Legal Representative / Abogado:

Signature / Firma:

                                            27 de agosto de 2018

Date / Fecha:

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

August 28, 2018

BY HAND

TO:   Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                      Edgar Esduardo Oroman

Legal Representative / Abogado:     Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                       28 de Agosto 2018

*Certified as a minority-owned business in the State of New York*

# MICHAEL FAILLACE & ASSOCIATES, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

October 3, 2018

BY HAND

TO:   Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff. **(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                  Ernestino (Mario) Hernandez
Legal Representative / Abogado:  Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                    3 de octubre de 2018

# Michael Faillace & Associates, P.C.
### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

September 19, 2018

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                         Eusebio Cruz

Legal Representative / Abogado:        Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                                19 de septiembre de 2018

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

September 18, 2018

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Ignacio Ferrada Diaz

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                     18 de septiembre de 2018

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.
### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

August 28, 2018

BY HAND

TO:   Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:          Jaime Lorenzo Garcia

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:       Jaime lorenzo

Date / Fecha:          28 de agosto 2018

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

———————

Faillace@employmentcompliance.com

August 31, 2018

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:              Jose Gonzalez

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:          Jose Gonzalez

Date / Fecha:               31 de Agosto del 2018

*Certified as a minority-owned business in the State of New York*

# MICHAEL FAILLACE & ASSOCIATES, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

October 4, 2018

**BY HAND**

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff. **(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                   Juan Miranda Huerta
Legal Representative / Abogado:  Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                    4 de octubre de 2018

# MICHAEL FAILLACE & ASSOCIATES, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

September 28, 2018

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff. **(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                   Luis Antonio Ortiz Ochoa
Legal Representative / Abogado:  Michael Faillace & Associates, P.C.

Signature / Firma:               *Luis A Orl'z*

Date / Fecha:                     28 de septiembre de 2018

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

August 28, 2018

BY HAND

TO:   Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:          Luis Jofree Lema Mayancela

Legal Representative / Abogado:   Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:          28 de Agosto del 2018

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

—————

Faillace@employmentcompliance.com

August 27, 2018

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                     Manuel De Jesus Gamez Sanchez

Legal Representative / Abogado:     Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                      27 de Agosto 2018

*Certified as a minority-owned business in the State of New York*